No. 45.—GEORGE W. MARTIN, plaintiff in error, *vs.* TOLLESSON T. ATKINSON, defendant.

[1.] An ancient boundary, corner or station tree cannot, generally, be proved otherwise than by reputation; consequently, hearsay evidence is admissible for this purpose, from the necessity of the case. It is not the best testimony, however, to prove the identity of a lot of land, there being higher evidence of that fact in the power of the party.

[2.] Sale of land under an outstanding incumbrance against the vendor, is an eviction in judgment of law, and the vendee is entitled to have the contract rescinded and the notes cancelled, given in payment.

[3.] A vendee, who takes up an outstanding incumbrance to protect his title, is entitled only to be refunded the amount paid out.

[4.] A vendee who is legally evicted, and who re-purchases the property, is in under a new and distinct title; and the price last paid is no criterion of damages for the injury he has sustained, on account of the failure of his vendor's title.

Martin *vs.* Atkinson.

[5.] A vendee, legally evicted of land by judicial sale under an execution against the vendor, is entitled to recover of the vendor the value of the beneficial and permanent improvements put upon the premises, over and above the rents and profits.

In Equity, in Pike Superior Court.  Tried before Judge FLOYD, February Term, 1849.

George W. Martin, by bill filed in Pike Superior Court, alleged, that in January, 1841, he purchased of Tollesson T. Atkinson a tract of land lying in Pike county, for which he took a bond for titles, and in payment, made a deed to a tract of land in Dooly county, and gave his notes for $500, due December, 1842.  Soon after the trade, Martin being about to place improvements on the land, it was levied on by *fi. fas.* against Atkinson; Martin then demanded a rescission of the contract, but upon the promise of Atkinson to remove the incumbrance, and in the event the land was sold, to pay for all improvements, Martin proceeded to place improvements on the land to the value of $400; subsequently the land was sold under the *fi. fas.* and purchased by one Mangham, who sold to Neal, who re-sold to complainant for $400.

The bill prayed a reconveyance of the Dooly lot, the cancellation of the notes for $500, and a reasonable compensation for the improvements on the land.

Atkinson in his answer admitted the contract as alleged, denied the agreement to pay for the improvements, and insisted that Martin has suffered damage only to the amount paid to Neal.

By a supplemental answer, *(see 5 Ga. Rep.)* he denied that the Dooly lot was any part of the consideration of the land in Pike. On the trial, the complainant offered to prove, by witnesses who had seen a lot in Dooly county, its identity with the lot in dispute, from what was said by the neighbors and the tenant on the lot. The Court rejected the testimony, and complainant excepted.

John Neal testified, that out of kindness to Martin, he bought the land from Mangham, who purchased it at Sheriff's sale; he took the land at Mangham's bid—$245—and sold it to Martin for $400; Mangham requested him not to deprive Martin of his home; there was no collusion to buy in the land.

Other evidence was before the jury, unnecessary to be repeated.

The Court charged the jury, "that they might give to the complainant redress for all the injury he had sustained by non-

compliance with the contract; that complainant had alleged that he had purchased the land in Pike from defendant, and gave a lot in Dooly and notes for $500, but does not allege that he ever paid the notes. He further alleges that the land in Pike was afterwards levied on and sold by virtue of an execution against the defendant; that he has made large and valuable improvements, and prays a rescission of the contract. It turns out that upon the sale of the land in Pike by the Sheriff, the complainant is permitted to retain the land upon paying Mr. Neal a certain sum of money. We are called on to do equity between these parties ; you will inquire into the question of the consideration, and particularly, whether the complainant has paid for it, and so frame your decree as not to compel the defendant to pay for the loss of title to land for which complainant may not have paid. If you believe he has never paid the purchase money, you may decree the amount of injury he may have suffered to be credited on the notes given for the land, and if the injury was sufficient to cover the whole of the notes, you may decree that they be delivered up to be cancelled."

To this charge complainant excepted, and the questions made upon it in this Court were—

1st. Whether the Sheriff's sale amounted to a vacation of the contract as to the land?

2d. Whether the amount paid by Martin to Neal was the proper measure of damages for the injury done him by the sale?

3d. Whether Martin was entitled to recover compensation for the improvements put upon the land?

W. W. ARNOLD, for plaintiff in error.

To divest our minds of a hindrance which appears to have haunted the imagination of the Judge below—though it really appears to me to have little or no connection with this case, let us see whether the oft repeated dogma that " Equity will not decree compensation for the improvements put on lands by him, *bona fide*, in favor of a *bona fide* possessor against the true owner," does not fall under the description of " law taken for granted," as was remarked by Lord *Denman*, and quoted by Judge *Lumpkin* in *Cumming's case*, 3 *Kelly*, 469. We will leave out of view *fraudulent* possessors and *squatters*, as not entitled. 4 *Peters' U. S.*

Martin *vs.* Atkinson.

*Rep.* 101, But is it law, that the *bona fide* possessor of lands cannot, on a bill by himself, recover pay for improvements put on the land in good faith on a defect of his title out of the true owner under any state of circumstances? Can he not, out of his vendor, recover more than mere *nominal* damages? These are serious questions, and about them legal minds have expressed different *opinions;* but I doubt whether they were ever solemnly *decided*, either in England or in this country.

Chancellor *Kent* in his commentaries, says: "There is *no adjudged case* professing to be grounded on Common Law principles, and declaring that the occupant of land was, *without any special contract,* entitled to pay for his improvements as against the true owner, *where the latter was not chargeable with having intentionally laid by and concealed his title.*" 2 *Kent,* 335. This *implies* that in such a case as laying by and concealing title, the occupant might get pay, as well as where there was a *special contract therefor.* But at best, it is a mere *negative* opinion or proposition: "there is *no* adjudged" case that he can. This may be true that there is no case that he can, yet we apprehend that it is equally true that there is *no adjudged case that he cannot.*

In speaking of the reason of the passage of the Statutes in several of the States on this subject, he says : " There were, however, peculiar and pressing circumstances which were addressed *to the equity* of the law given, and led to their passage." *Ib.*

" No man ought to be entitled to it unless he entered and improved, in a case which appeared to him, after diligent and faithful inquiry, to be free from suspicion." *Ib.*

Judge *Story* in 2 *Story's Eq.* §799, *b*, says : "It has been sometimes *thought,* that as a matter of *justice,* Courts ought to go further, and in favor of a *bona fide* possessor of lands whose title is defective, decree compensation for the improvements put on in good faith against the true owner who asserts his title to it." " But Courts of Equity have *never* gone to this extent, but have simply confined themselves to the administration of *the equity* in cases where their aid has been invoked by *the owner* in support of *his* equitable claims." " They have *never* enforced, in a direct suit by the *bona fida possessor, his* claim to meliorations," &c. This appears also to be a mere *negative opinion,* but it *impliedly* goes a little farther than Chancellor *Kent.*

Chancellor *Walworth* in *Putnam vs. Ritchie,* 6 *Paige,* 390, 405,

says: "This principle of *natural equity* is constantly acted upon in this Court, &c. &c. I have not been able to find *any* case, however, in England or this country, wherein the Court has assumed jurisdiction to give relief to a *complainant* who has made improvements upon land, the legal title to which was in defendant, *where there has* been neither *fraud* nor *acquiescence* on the part of the latter, after he has knowledge of his rights," &c.

Now this *implies* that there *are* cases giving the occupant redress in cases of *fraud* and *acquiescence.* But still it, too, appears *negative.* That there is no case that he *can,* is not equivalent to a case that he *cannot.*

It is clear that he could, by the Civil Law, and by the laws of those countries deriving their jurisprudence from it. *See Inst. Justinian, lib.* 2, *tit.* 1, §§30, 35. 1 *Martin's Law Rep.* 405. 20 *Ib.* 609, 615, 620. *Civil Code, livre* 3, *tit.* 6, *ch.* 4, §3, §1, *art.* 1634. 2 *Story's Eq.* §799, *b,* §1239.

It was *intimated* to be the law of England and of this country, in 3 *Atk. R.* 134. 2 *John. Cases,* 441. 1 *Lim. & St.* 552. 6 *Madd. R.* 2. 8 *Price's R.* 518. 8 *Wheat. R.* 1, 77. 1 *Younge & Col.* 427. 1 *Johns. Ch. R.* 150, 285, '7.

Now, it is admitted by Chancellor *Walworth,* that there is " a *natural equity*" in favor of the doctrine of compensation in such cases, and by Chancellor *Kent,* that " there were *peculiar and pressing circumstances* which are addressed *to the equity* of the law giver" in his favor, and by Judge *Story,* that " it is sometimes *thought* that Courts *ought to go farther*" than it is asserted they have on this subject. They have gone so far as to allow compensation to the occupant for his improvements, against the owner, whenever he sued, or there was *fraud* on his part, or *acquiescence* by him, after knowledge of his rights. 6 *Paige,* 390, 405, *sup.* 200. It does not appear to have ever been *decided affirmatively* that *he* could not, whenever he, the improver, sued therefor; and where, we ask, is the difference in principle between a plaintiff and defendant, as to the equity? If it lies in favor of a defendant for defence, when sued, why would it not equally lie on a bill by him therefor? It would appear that in principle, there is no difference. *See opinion of Supreme Court by Nisbet, J. in case of Davis et. al. vs. Smith et. al.* 5 *Ga. R.* 288, '9. But we do not contend for the doctrine in its fullest extent, and we think there are many reasons for its limited restriction. Perhaps the cases show its full extent

which is asserted in *Putnam vs. Ritchie*, that it holds good in all cases of *fraud* or *unreasonable acquiescence.*

But to return from this discussion to our case. And before proceeding, we will merely premise the following axioms as ancillary to its proper elucidation, viz:

Multiplicity of suits ought to be avoided, and the bill aided. 4 *Ga. R.* 592. The eviction here was sufficient. 3 *Kelly*, 460. 4 *Ga. R.* 593, 606, '8. Cancellation of void instruments is the province of Equity. 2 *Story's Eq.* §§700, 703. Neal, the purchaser at Sheriff's sale, is not to pay for the improvements. In all cases where the matter lies in compensation, be the condition precedent or subsequent which is broken, the Court will relieve. 1 *Vern. R.* 83, 167, 223, 270. 1 *J. C. R.* 150, 287. And though estate void the agreement good, and Equity will relieve. 1 *Vern. R.* 159. *Chitty on Cont.* 306, *n.* 2. Then to the case at bar. The bill is filed by the *bona fide* occupant of lands, of which he has been evicted by the laches of the defendant, his vendor, i. e. by execution against his vendor, for the cancellation of the notes given for the purchase thereof, and recovery of the amount paid as a deposit, (the Dooly lot,) and as ancillary to this relief, pay or compensation for improvements put on the land, in good faith, under a contract therefor. Will the bill lie? It was once demurred to and the demurrer overruled. Still, if proven, will relief be granted, and on what terms? The Court below held, that the bill would lie, and would have allowed a re-coupment of all moneys paid on the notes; but as the terms of this relief, held plaintiff to payment of the notes first. Did he err? He charged the Jury, in substance, that plaintiff could not recover till he paid the notes, and if the amount he paid on the re-purchase did not cover the notes, to *credit* them. We contend he erred, and shall endeavor to maintain the following positions—remarking first, that the Judge appears to have passed, intentionally, the most important, and almost the only question or issue in the case over in silence—I allude to the question of paying for improvements. The bill alleges them to be worth $400, and proves it, and most of the proof is to that issue, yet His Honor seems to disregard it altogether; at all events, he held that we could not recover it till we paid the notes:—

1*st Position or Point.*—If A sells lands to B, and takes his notes for the purchase money, and the land is afterwards sold under ex-

ecution against him for A's debts, and B evicted, the contract is rescinded and the notes avoided—their consideration has wholly and totally failed. *Chitty on Bills*, 87. *Chitty on Contracts*, 307, 311. 2 *Wheat. R.* 13. 1 *Bail. R.* 250, '9. 1 *Nott & McCord*, 78.

*2d Point.*—And in such case B can recover for beneficial and lasting improvements put on said land, *bona fide*, in the interim between the trade and the Sheriff's sale, either with or without a contract therefor, without paying the notes given for its purchase. *Just. Inst. lib.* 2, *tit.* 1, §§30, 35. *Code Civil, livre* 3, *tit.* 6, *ch.* 4, §3, 1, *art.*·1634. 6 *B. & C.* 31. 10 *Ib.* 416. 3 *Marsh. R.* 179, cited in 2 *Sugd. on Vend.* 63, *note* 287. 2 *Ala. Rep. N. S.* 108, cited in 2 *Kelly,* 461. 9 *Bing. R.* 613, *Hopcroft vs. Keys. Loomis vs. Bedel,* 11 *N. Hamp. R.* 82, cited in 4 *Ga. Rep.* 607.

*3d Point.*—Equity will decree a cancellation of the notes, and as ancillary thereto, pay for the improvements on a bill therefor. 1 *Johns. Ch. R.* 150, 287. 2 *Story's Eq.* §§798, 799, *a and b,* §1234, '9. 11 *S. & R.* 109. 12 *Ves.* 395. *Fauk vs. Voneida,* cited in 4 *Kent,* 477.

*4th. Point.*—And it makes no difference that C, the *bona fide* purchaser at Sheriff's sale, afterwards re-sold said land to B for less than B was to pay A for it; for A is not entitled to the benefit of C's liberality to B. 9 *Bing.* 613, *Hopcroft vs. Keys.* 4 *Ga. R.* 607.

*5th Point.*—The identity of lands can be proven by hearsay or general reputation. 2 *Phil. Evid. notes by Cowen, &c. pages* 628, 639, *note* 477 *to page* 249 *of vol.* 1.

*6th Point.*—A new trial will be granted—

1. For error in the charge of the Judge to the Jury. 4 *Ga. R.* 360, *&c.*

2. Where the Jury find clearly against evidence and equity. 4 *Ga. R.* 193, 428, *&c.*

3. Where the finding of the Jury covers only one issue made in the cause, where several issues are joined. 8 *Am. C. L. R.* 311, 312, 313. 5 *Verm. R.* 54. 1 *Day's Rep.* 189. 1 *Ld. Raymond,* 324. 2 *Salk. R.* 664.

G. J. GREEN, for defendant.

This bill does not charge that the plaintiff in error ever paid for the land. Where the action is for breach of covenant, for

quiet enjoyment, the measure of damages is the purchase money, with interest. This has been settled by this Court. *Davis et al. vs. Smith et al.* 5 *Ga. Rep.* 285. Numerous cases could be here cited, but this case is so clear that it would be presumption in me to attempt to strengthen it.

But the plaintiff takes the ground, that this suit is for the recovery of the value of work done on the premises, which the defendant promised he would pay in the event of an ouster. This is in the nature of a covenant against incumbrances, and must be governed by the same rule. The measure of damages, in such cases, is the amount paid by the vendee to remove the incumbrance. See *Prescott vs. Trueman,* 4 *Mss. R.* 627. *Wyman vs. Ballard,* 12 *Mss. R.* 304. *Chappell vs. Bull,* 17 *Mss.* 221. The same rule holds in New York. See *Hall vs. Dene,* 13 *John. R.* 105. This is a case in point with the facts of the case at bar. See, also, *Baldwin vs. Mun,* 2 *Wend.* 399. A number of cases could be noted to the same point.

In *Waldron vs. McCarter,* (3 *Johnson,* 472,) and *Carr vs. Shaw,* (13 *John.* 236,) Justice *Spencer* reviews all the cases, and decides, "that an action of covenant will not lie unless the vendee be actually ousted." And farther, "that a purchase by the vendee of the incumbrance, does not amount to an actual ouster." Now, according to this rule, the plaintiff in error has received more than he is entitled to; for he purchased the incumbrance with four hundred dollars—one hundred less than his notes for the land, besides nearly one hundred of interest—has never been out of possession, enjoyed all his improvements, and *still* complains. This bill cannot, consistently with the authorities, claim more than the amount of damage *actually* sustained, and in this case the amount paid to remove the incumbrance is the amount.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Martin filed his bill against Atkinson, alleging that he purchased of defendant a tract of land in Pike County, for which he gave him a lot in Dooly, No. 247, 2d District, and his notes for $500; that he took a bond for titles, and went into possession; that shortly thereafter an execution against Atkinson was levied on the land, whereupon he applied to have the contract rescinded; but upon being assured by the vendor, that the incumbrance

should be removed, and that if he lost the land he should be fully remunerated for all the improvements which he might put upon it, he proceeded to clear ground and erect houses, and made other permanent and beneficial improvements on the premises, to the value of $400; that the land was again levied on and sold, under and by virtue of the lien which was outstanding at the time of the contract, and bought by one Mangham, at and for the sum of $245; that he was evicted by the Sheriff, and possession given to Mangham; that subsequently Mangham sold to Neal and Neal to complainant. The prayer of the bill is, that the notes given in payment may be cancelled, the Dooly land re-conveyed, and compensation made for the improvements.

The original answer substantially admitted all the charges in the bill, except as to the agreement respecting the improvements. Afterwards, the defendant having obtained leave, amended his answer, and denied that the transfer of the Dooly land constituted any part of the price given for the tract in Pike; but stated that it was conveyed on other and distinct considerations altogether.

[1.] During the progress of the trial, witnesses were introduced by the complainant, to prove the identity of the lot of land in Dooly County, by what they heard the neighbors and one Brown, the occupant, say, which evidence was rejected by the Court on the ground that it was *hearsay.*

Ancient boundaries, corners and station trees cannot, generally, be established otherwise than by reputation. Hence, this species of evidence is admissible for this purpose, from the necessity of the case. 2 *Litt.* 159. But this case does not fall within the rule. There was obviously higher and better evidence of the identity of the land in the power of the party, and therefore, that tendered was properly rejected. 12 *Vermt.* 178. 24 *Pick.* 71. 5 *Watts & Serg.* 60. 1 *Strobhart,* 246.

These pleadings present rather a novel question, which we will forbear to discuss, inasmuch as it is unnecessary to do so. The original answer admits, distinctly, that the lot of land in Dooly made a part of the price of the Pike tract. The amended answer expressly denies that it did, and states that the previous acknowledgment was made by mistake. Which is *the answer* of the defendant? Both, or the latter as amended? May the *last* statement be discredited by the *first?* Or does it still require two wit-

Martin *vs.* Atkinson.

nesses, or one and corroborating circumstances, to disprove the answer?

After the testimony had closed, the Court charged the Jury, in substance, that the contract between Martin and Atkinson was still subsisting, and that they might set off against the notes which he gave for the land, the amount of injury he had sustained; intimating that if he had bought the land from Neal for less than he was to pay Atkinson, that he was not damaged.

[2.] In the opinion of this Court, the sale by the Sheriff was an eviction in law, and vacated the contract. Nor was the $400 paid by Martin to Neal the proper measure of damage for the injury done to Martin. Indeed, it had nothing to do with the matter.

[3.] Whenever a vendee, in order to protect his title, takes up an outstanding incumbrance, he is entitled only to be refunded the amount paid.

[4.] But when the property is, *bona fide*, sold under a mortgage or judgment lien, existing at the time of the contract, without fraud or contrivance on the part of the vendee, and the vendee re-purchases, the price which he pays is no criterion whatever of the damage sustained. Suppose Neal or Mangham had *given* the land to Martin, would that have relieved Atkinson from his liability? What right has he to profit by the good fortune of the other party? Then, on the other hand, suppose Martin had seen fit to give $1000 to retain the land, surely Atkinson would not have had to bear the loss.

[5.] As to the right of Martin to recover compensation for the value of the improvements which he put upon the land, over and above the rents and profits while he occupied it, it would seem to be founded on the clearest principles of equity. Atkinson got the benefit of these improvements—what justice would there be in not making him pay for them?

Judgment reversed.